**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF VERMONT**

| | | |
|---|---|---|
| SANDRA ANDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No.  5:09-cv-16 |
| v. | ) | |
| | ) | |
| KATHLEEN SEBELIUS, | ) | |
| Secretary of Health and Human Services, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S REPLY TO**
**DEFENDANT'S MOTION FOR ORDER AFFIRMING THE SECRETARY'S DECISION**

Plaintiff Sandra Anderson hereby responds to the Secretary's Motion for an Order Affirming the Decisions of the Secretary.  Ms. Anderson opposes the Secretary's Motion and requests that her own Motion for an Order Reversing the Secretary's Decision and for Other Relief be granted.

**I.      Introduction**

The administrative review decisions during Sandra Anderson's appeal all demonstrate an underlying policy that Medicare coverage for home health services must be automatically denied for any and all services if a beneficiary has a chronic condition that does not change dramatically while services are being provided.  This policy violates Medicare law and must be stopped.

The Secretary does not address the fact that the Administrative Law Judge (ALJ) improperly based her decision, in part, on whether Ms. Anderson's condition was "chronic," A.R. 52, and that such a consideration is prohibited by regulation.  42 C.F.R § 409.44(b)(3)(iii).  Nor has the Secretary adequately rebutted evidence that the initial Medicare

contractor, Qualified Independent Contractor (QIC), ALJ, and Medicare Appeals Council (MAC) all applied a rule of thumb denying coverage of skilled foot care, management and evaluation, occupational therapy, and observation and essessment if a beneficiary's condition is "stable." This Court has clearly held that "the fact that skilled care has stabilized a claimant's health does not render that level of care unnecessary." *Bergeron v. Shalala*, 855 F.Supp 665, 669 (D. Vt. 1994). Nevertheless, the Secretary has here denied coverage simply because Ms. Anderson's condition was supposedly "stabilized" by the care Medicare paid for during the first two months after she returned home from the hospital.

The Secretary supplements the "stability" argument with a new presumption: that skilled services being provided to a beneficiary become unskilled if the beneficiary is unable to adhere to a rehabilitation plan and prescribed diet without assistance. *Def.'s Memo* at 2. This standard is unsupported by any statute, regulation, or manual directive, and it appears nowhere in the ALJ's decision. It is also contrary to common sense. *Cf. Friedman v. Sec'y of Dept. of Health and Human Servs.*, 819 F.2d 42, 45 (2d Cir. 1987) (Determining whether a beneficiary needs skilled care should rest on "a common sense, non-technical consideration of the patient's condition as a whole."). While it is true that Ms. Anderson's stroke left her with impaired decision-making and a need for 24-hour supervision, it is unclear why this would turn skilled care into unskilled care. On the contrary, a beneficiary whose mental impairments hinder her ability to manage her own care needs greater professional involvement in her care and is at greater risk of complications. More importantly, the violation of Ms. Anderson's due process rights that resulted from application of the illegal "chronic" rule of thumb is not reduced by the suggestion that the Secretary's reviewers might have been secretly applying a second illegal coverage screen as well.

## II.    Ms. Anderson is entitled to Medicare coverage

Ms. Anderson is entitled to Medicare coverage of the skilled and unskilled home health services provided to her if she needed intermittent skilled care.  42 U.S.C. § 1395x(m) and 42 C.F.R. § 409.45.  The requirement for intermittent skilled nursing care is met when a Medicare beneficiary requires skilled nursing at least once every sixty days.  *Medicare Benefit Policy Manual* Ch. 7 § 40.1.3.  The clinical record demonstrates that Ms. Anderson required, and received, skilled services at least once during each 60-day certification period.  As explained in Ms. Anderson's Motion, she needed and received a wide assortment of skilled services, including skilled observation and assessment, management and evaluation of her condition, skilled foot care, physical therapy, and occupational therapy.  While the Secretary has not adequately rebutted her entitlement to coverage under any of those services, Ms. Anderson's entitlement to coverage is most simply demonstrated by consideration of physical and occupational therapy.

### A.  Physical therapy was necessarily a covered service because Ms. Anderson's condition was expected to improve

Even under the ALJ's illegal standard, physical therapy is reasonable and necessary if there is "an expectation that the beneficiary's condition will improve materially in a reasonable (and generally predictable) period of time."  42 C.F.R. § 409.44(c).  The Secretary does not dispute that Ms. Anderson's physical therapist and doctor expected her to gain the ability to walk with a cane independently as a result of her physical therapy.  *Def.'s Memo* at 18 ("[T]he goal of her physical therapy program was to enable her to walk with a cane independently.") (citing A.R. 101, 191, 193, 197, 610, and 641).  The ALJ was simply wrong to claim that the treatment notes "do not indicate any … reason to anticipate progress," A.R. 40 at 24, and the Secretary appears to have abandoned that claim.

The Secretary's new assertion that Ms. Anderson should be denied payment for her physical therapy because she improved but did not reach her goal, *Def.'s Memo* at 18, is wholly unsupported by law. The need for physical therapy must be based on "the physician's assessment of the beneficiary's restoration potential and unique medical condition." 42 C.F.R. § 409.44(c)(2)(iii). Physical therapy is a covered service even if the beneficiary does not improve as much as expected. The Secretary's new theory, which was not mentioned by the administrative reviewers, reinforces the conclusion that the Secretary has an unpublished "improvement" standard calling for denial of coverage if a beneficiary's condition is not actually improving, even though actual improvement is not required by law.

### B. There is no justification for the Secretary's denial that occupational therapy was a skilled service

The evidentiary record is unambiguous that Ms. Anderson's physician ordered a skilled therapist to provide her with occupational therapy because her stroke had destroyed her ability to perform even such basic tasks as making oatmeal, this therapy was expected to significantly improve her ability to care for herself, and occupational therapy was indeed provided. *See, e.g., A.R.* 170-172, 605-611, 915-916. The Secretary now argues, for the first time, that "no record evidence" supports the need for skilled occupational therapy. This bare statement contradicts the medical record and is unsupported by any factual findings that might be entitled to deference. The record clearly indicates that Ms. Anderson's treating physician ordered the involvement of an occupational therapist and certified that this skilled care was necessary. A physician's "certifications are a relevant part of the factual record when determining coverage." *Carey v. Sebelius*, ___ F.Supp.2d ___, No. 2:08-CV-168, 2010 WL 997386, at *4 (D. Vt. 2010).[1] The

---

[1] The Secretary's reliance on HCFA Ruling 93-1 (May 18, 1993), is misplaced. The ruling applies only to two types of services: inpatient hospital and skilled nursing facility care.

Secretary has not cited and could not cite any evidence that the occupational therapy was

unskilled.  Unsupported speculation that stroke victims do not need skilled occupational therapy

cannot substitute for the reasoned judgment of a treating physician. *See Holland v. Sullivan*, 927

F.2d 57, 60 (2d Cir. 1991); *Bergeron,* 855 F.Supp. at 669; *Kertesz v. Crescent Hill Coal Co*., 788

F.2d 158, 163 (3d Cir. 1986); Medicare Benefit Policy Manual, Ch. 7, §40.1.1.

### III.    The ALJ's application of illegal rules of thumb violated Ms. Anderson's Due Process rights and requires declaratory relief

The Secretary's administrative reviewers denied coverage for necessary skilled services

including skilled occupational therapy, skilled foot care, skilled physical therapy, and skilled

observation and assessment without making a detailed review of the administrative record in

light of the correct legal standards.  Instead, they concluded that skilled care was not necessary

because Ms. Anderson had a chronic condition that was not changing as much as is apparently

required by their rule of thumb.  This method of review violated Ms. Anderson's due process

rights.

Now in federal court, the Secretary suggests theoretical conclusions that the

administrative reviewers might have reached if they had actually considered Ms. Anderson's

individualized condition.  Most of these new bases for denial are themselves rules of thumb

contrary to Medicare law and regulation, such as the suggestion that skilled treatment of a

disease becomes unskilled if the disease is caused or aggravated by the patient's behavior.  Most

importantly, Ms. Anderson has a procedural right not to have consideration of need for skilled

care short-circuited by application of illegal presumptions.

---

HCFA Ruling 93-1 at 35,760-35,761 (*reprinted in* Def.'s Exhibit A at 1). The current case concerns neither. Moreover, even if the Ruling applied, it would not justify ignoring Dr. Mann's certifications and plans of care; on the contrary, it provides that "if the physician's certification of medical need for services is consistent with the other records submitted in support of the claim, the claim is paid." *Id*. at 35,762 (*reprinted in* Def.'s Exhibit A at 3).

**A.  The Secretary violated Ms. Anderson's right to due process using an illegal rule of thumb or presumption to deny coverage**

All five levels of administrative reviewer failed to properly address Ms. Anderson's overall condition and the services that she needed.  For each skilled service, every reviewer made a cursory analysis of a few services, concluded that Ms. Anderson did not need skilled care because she was "chronic" or "stable," and then declined to assess her individualized need for a number of other skilled services.

No reviewer considered Ms. Anderson's need for skilled management of her overall care plan, even though her treating physician certified the need for skilled management and ordered skilled management to be provided.[2]  The Secretary's post-hoc explanation that coverage may have been denied because "Anderson's medical condition was stable throughout the contested periods," *Def.'s Memo* at 14, supports rather than rebuts the inference that reviewers' failure to consider her need for skilled management was based on some unwritten rule denying management services for "chronic" or "stable" beneficiaries.

The same flawed process was applied to Ms. Anderson's need for maintenance physical therapy.  Although the Secretary recognizes that maintenance services were provided, *Def.'s Resp. to Pl's Obj. to Magistrate Judge's Order* at 8 ("The record confirms that, during each of the four subsequent certification periods, Plaintiff had a maintenance or 'Home Exercise Program' in place"), none of the five levels of administrative review addressed the maintenance services.  After the ALJ incorrectly decided that the physical therapy could not be expected to improve Ms. Anderson's condition, she had a legal obligation to analyze whether physical

---

[2] The ALJ briefly mentioned management of personal care services alone, A.R. 52, but neglected to consider management of the overall care plan. *See Hurley v. Bowen*, 857 F.2d 907, 911 (2d Cir. 1988) ("[T]he aggregate of services provided by non-professionals may require the involvement of technical or professional personnel to evaluate and manage their provision."); *see also Sawyer v. Sullivan*, No. 90-62, 1991 WL 350049, at *3 (D. Vt. Apr. 17, 1991).

therapy was necessary to perform a safe and effective maintenance program.  The ALJ's inclusion of the relevant regulations in a boilerplate quote, A.R. 50, does not remedy the ALJ's application of an illegal coverage screen in her actual coverage analysis.  A.R. 53.

The reviewers' repeated refusal to consider the need for maintenance therapy is not "harmless error."  *Def.'s Memo* at 9.  In *Fox v. Bowen*, 656 F.Supp. 1236, 1246, 1250 (D.Conn.1986), then District Judge Cabranes found "a practice on the part of the [Medicare reviewers] of denying physical therapy benefits under Part A of Medicare for maintenance therapy" to be a violation of the Due Process Clause.  The practice was a Due Process violation and merited declaratory relief even though the Court could not say "that all or even most of the class members who were denied coverage for physical therapy as a result of the intermediaries' inflexible and arbitrary practices ought to have received coverage." *Id.* at 1248.  In addition, no reviewer applying the correct standard could have denied Ms. Anderson coverage of maintenance therapy.  The Secretary recognizes that reevaluations of a maintenance program are covered skilled services and does not appear to dispute that the physical therapist needed to reevaluate Ms. Anderson's maintenance therapy.  *Def.'s Memo* at 20.  Instead, the Secretary proposes that the ALJ might have applied an illegal rule of thumb that a mentally-impaired beneficiary who is partially noncompliant with self-care recommendations is disqualified from necessary skilled care.  This flawed suggestion does not justify her reviewers' decision to continue applying the rule rejected in *Fox*.

Similarly, although the ALJ acknowledged that Ms. Anderson needed skilled foot care, A.R. 52, no reviewer gave a reason for denying coverage of the skilled foot care that *was* provided by a skilled nurse; instead, the reviewers applied a standard requiring a changing condition.  *See, e.g.,* Decision Rationale (Attachment 3 to Doc. 21) ("Skilled foot care was

rendered, however the criteria for Medicare coverage was not met. There were no documented changes in medications, changes in the plan of care, or changes in the beneficiary's baseline medical status that required skilled intervention."). Skilled foot care for diabetics is a skilled service when ordered by the physician even if there are no changes in baseline status. *See* Medicare Benefit Policy Manual Ch. 15, § 290(D) (otherwise routine foot care is a covered skilled service when provided to a person with a condition such as diabetes if a doctor of medicine documents the condition). The Secretary's reviewers were improperly applying a presumption that beneficiaries with chronic conditions like diabetes may not receive coverage.[3]

### B. Declaratory relief is necessary to remedy the due process violation

Simply paying for Ms. Anderson's coverage will not remedy the injury done to Ms. Anderson by improper processing of her claim. Courts have repeatedly struck down application of the Secretary's illegal standard, yet the Secretary's administrative reviewers continue to deny Medicare coverage merely because a beneficiary has a chronic or stable condition.

Although the record does not reveal exactly how the Secretary is instructing her administrative reviewers because discovery was not permitted, the practice of the administrative reviewers unambiguously demonstrates that whatever instruction they are receiving is leading them to apply an illegal rule of thumb. As mentioned above, *Fox v. Bowen*, 656 F.Supp. at 1236, 1251-1253 found that administrative reviewers applying methods used here had violated claimants' Due Process rights. In *Folland v. Sullivan*, No. 90-348, slip op. at 12-13, 1992 WL 295230, *17 (D.Vt. July 6, 1992) and *Smith on behalf of McDonald v. Shalala*, 855 F.Supp 658, 663 (D.Vt. 1994), this Court reversed ALJs whose decisions had denied coverage simply because

---

[3] Contrary to the Secretary's suggestion, the fact that a podiatrist also provided some skilled foot care does not make foot care unskilled or unnecessary when provided by a nurse. *Cf.* 42 C.F.R. § 409.44(b)(1)(iii) (a skilled service remains skilled "when provided by a nurse" even if it is "taught to the beneficiary or to the beneficiary's family or friends.").

the beneficiaries had not suffered complications.  The practice was found to be inconsistent with regulations yet again when twelve plaintiffs challenged the Secretary's practice of denying coverage on the grounds that the patient's medical condition is classified as "chronic" or "stable." *Rizzi v. Shalala*, No. 88-360, 1994 WL 686630, *4 (D.Conn 1994).  The *Rizzi* the court rejected the plaintiffs' claims as moot because it concluded Secretary's regulations unambiguously prohibit reviewers from denying coverage because a beneficiary is "chronic" or "stable."  *Id.* Yet in *Carey v. Sebelius,* ___ F.Supp.2d ___, 2010 WL 997386, this Court again found it necessary to reverse an ALJ who had denied coverage because the beneficiary's condition had allegedly been "stabilized."

Now this Court must once again reverse a denial of coverage in which five levels of administrative reviewers applied the "chronic" and "stable" presumption that has been rejected again and again.  This history of defiance calls for stronger action than mere reversal of the Secretary's decision.  It is time to state unequivocally that this practice is impermissible.

## IV.    Conclusion

For these reasons, and for the reasons given in Ms. Anderson's previous memoranda, Ms. Anderson requests that this Court deny the Secretary's Motion and grant her own Motion for an Order Reversing the Secretary's decision and for Other Relief.

Dated at Springfield, Vermont this 16th day of June, 2010.

Sandra Anderson


June 16, 2010                           /s/ Jacob S. Speidel
Date                          By:    Jacob S. Speidel
                                     Staff Attorney
                                     Medicare Advocacy Project
                                     Vermont Legal Aid, Inc.
                                     56 Main St., Suite 301
                                     Springfield, VT 05156

(802) 885-5181
jspeidel@vtlegalaid.org

Michael Benvenuto
Project Director
Medicare Advocacy Project
Vermont Legal Aid, Inc.
P.O. Box 1367
Burlington, VT 05402
(802) 863-5620

Gill Deford
Judith A. Stein
Margaret Murphy
Center for Medicare Advocacy, Inc.
P.O. Box 350
Willimantic, CT 06226
(860) 456-7790

Attorneys for Plaintiff Sandra Anderson