U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2010 OCT 25 AM 11:04

CLERK

BY _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

SANDRA ANDERSON,           )
                           )
        Plaintiff,         )
                           )
v.                         )    Case No. 5:09-cv-16
                           )
KATHLEEN SEBELIUS,         )
Secretary of Health and Human )
Services,                  )
                           )
        Defendant.         )

**OPINION AND ORDER ADOPTING IN PART
AND REJECTING IN PART
MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**
(Docs. 48, 49)

This matter came before the court on the Objection of Plaintiff Sandra Anderson (Doc. 49) to the Magistrate Judge's Report and Recommendation ("R & R"), filed on August 27, 2010 (Doc. 48). In the R & R, the Magistrate Judge recommended granting Plaintiff's Motion for an Order Reversing the Secretary's Decision (Doc. 30) and denying the motion by Defendant, Kathleen Sebelius, Secretary of Health and Human Services (the "Secretary"), to affirm the same (Doc. 34). Plaintiff objects to the R & R insofar as it finds that further discovery for her due process claim is not warranted and because it concludes that the Administrative Law Judge ("ALJ") did not apply an improper presumption in denying coverage for skilled observation and assessment services.

The Secretary opposes Plaintiff's objection to the R & R (Doc. 50), arguing that Plaintiff's objection is moot, that further discovery is not warranted, and that the R & R correctly found that the ALJ did not employ an improper presumption in denying coverage.

Plaintiff is represented by Gill Deford, Esq. and Jacob S. Speidel, Esq. The Secretary is represented by Assistant United States Attorney Nikolas P. Kerest.

## I. Standard of Review.

A district judge must make a *de novo* determination of those portions of a magistrate judge's report and recommendation to which an objection is made. Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1); *Cullen v. United States*, 194 F.3d 401, 405 (2d Cir. 1999). The district judge may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *accord Cullen*, 194 F.3d at 405.

At issue in this case is whether the ALJ improperly denied Plaintiff coverage for certain home health services under the Medicare Part A program, based upon the ALJ's conclusion that the services did not meet Medicare coverage criteria. To be covered under the Medicare statute, the services must be "reasonable and necessary" to be reimbursed. *New York ex rel. Bodnar v. Sec'y of Health & Human Servs.*, 903 F.2d 122, 125 (2d Cir. 1990) (citing 42 U.S.C. § 1395ff(a) (Supp. V 1987); *Heckler v. Ringer*, 466 U.S. 602, 617 (1984)); *see also New York ex rel. Holland v. Sullivan*, 927 F.2d 57, 58-59 (2d Cir. 1991) (noting that "[t]he Secretary may not provide reimbursement for services that are 'not reasonable and necessary' for diagnosis or treatment of illness or injury.") (quoting 42 U.S.C. § 1395y(a)(1)(A)).

Pursuant to *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987), the determination of whether services are reasonable and necessary under the Medicare Act must be based on substantial evidence[1] and must be in accordance with correct legal standards. *See* 42 U.S.C. § 405(g). The reviewing court must defer to the Secretary's supported findings of fact; it is not, however "bound by the Secretary's conclusions or interpretations of law, or an application of an incorrect legal standard." *Exec. Dir. of*

---

[1] "[Substantial evidence is] more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

2

*Office of Vt. Health Access ex rel. Carey v. Sebelius*, 698 F. Supp. 2d 436, 439 (D. Vt. 2010) (citation and internal quotation marks omitted).

## II.     Factual Background.

The parties do not dispute the Magistrate Judge's recitation of the operative facts. The court thus adopts them verbatim.

> Sandra Anderson began receiving home health services from the Visiting Nurse Association of Chittenden and Grand Isle Counties ("VNA") on June 7, 2004. She was 60 years old at the time, and had just returned home after being hospitalized for her second stroke. She suffered from urinary incontinence, "acute, but ill-defined" cerebrovascular disease, hypertension, cognitive impairments including memory deficit, limited physical mobility, slurred speech, and newly diagnosed type II diabetes. (AR 175-76, 256.) Because of her cognitive impairments and immobility, Anderson required 24-hour supervision to remain safe in her home environment. (AR 172.)
>
> Ms. Anderson's treating physician, Dr. Stephen Mann, certified a variety of skilled nursing services for Anderson that included skilled diabetic foot care, patient education on diabetes management and a diabetic diet, overall management and evaluation of her care plan, and observation and assessment of her condition. In addition, Anderson received physical and occupational therapy, medical social services provided by a social worker, and non-skilled personal care. (*See, e.g.*, AR 170-73.) Dr. Mann certified (and re-certified) this care for six 60-day certification periods from June 7, 2004 to June 2, 2005. (AR 170, 605, 915, 1238, 1386.) While care was certified into June 2005, Anderson's occupational therapy concluded on September 12, 2004 (AR 216), and she was discharged from physical therapy on December 2, 2004 (AR 643-44).
>
> Associated Hospital Service, the fiscal intermediary tasked with making the initial coverage determination in this case,[2] covered the services provided to Anderson during the first certification period of June 7 to August 6, 2004, but denied coverage for the remaining five periods. (AR 343, 728, 862, 1183.) The intermediary upheld the denials on reconsideration, and Maximus Federal Services, a Medicare "Qualified

---

[2] The Center for Medicaid and Medicare Services ("CMS"), which is the federal agency within HHS that administers the Medicare program, contracts out its claim processing to private companies referred to as "fiscal intermediaries." Fiscal intermediaries are required to reimburse providers only for those items and services covered by Medicare. *See generally Yale-New Haven Hosp. v. Leavitt*, 470 F.3d 71, 73 (2d Cir. 2006).

> Independent Contractor" ("QIC"), affirmed on October 30, 2007. (AR 123, 562, 861, 1182.)
>
> Anderson then sought review by an Administrative Law Judge ("ALJ"), and a hearing was held on February 12, 2008 with Anderson's counsel appearing via video teleconference. (AR 1385-99.) In separate decisions dated February 19, 2008, the ALJ affirmed the denial of coverage for all five of the challenged certification periods, finding that "[t]he home health services provided to Sandra Anderson . . . did not meet Medicare coverage criteria." (AR 54, 497, 787, 1110.) However, the ALJ also waived Anderson's liability because the VNA did not sufficiently notify Anderson that Medicare would not cover her services. *Id.*; *see* 42 U.S.C. § 1395pp(b). This disposition left the VNA solely responsible for the uncovered service charges. Anderson then appealed the denial of coverage for the second, third, fourth, and fifth periods (August 7, 2004 to April 3, 2005) to the Medicare Appeals Council ("MAC"), and the MAC, in what constitutes the Secretary's final decision, affirmed the ALJ's decisions on November 20, 2008. (AR 5.)
>
> Having exhausted all of her administrative remedies, Anderson commenced this suit against the Secretary on January 22, 2009. (Doc. 3, Compl.)

(Doc. 48 at 1-4, footnote omitted.)

In her Complaint, Plaintiff claims that the Secretary violated the Medicare statute, regulations, and policy manual by applying an "informal" and "unlawful" presumption (Doc. 30-1 at 1, 5)—hereafter, the "stability presumption"—whereby coverage is automatically denied for patients whose conditions are stable during the covered period. Plaintiff claims that this stability presumption violated her Fifth Amendment due process rights. Plaintiff further alleges that the Secretary's factual findings in denying her coverage were not supported by substantial evidence.

In the R & R, the Magistrate Judge found that the ALJ did not apply a stability presumption in denying Plaintiff's Medicare coverage. He also rejected Plaintiff's associated argument that her due process rights were violated by the Secretary's alleged practice of automatically applying a stability presumption. He nonetheless found that reversal and remand were appropriate because the ALJ had committed other legal errors and had made factual findings in denying coverage that were not supported by substantial

4

evidence. Finally, the Magistrate Judge found that Plaintiff was not entitled to declarative, injunctive, or mandamus relief.

### III. Subject Matter Jurisdiction.

The Magistrate Judge, *sua sponte*, invited the parties to brief the issue of standing and found that, although Plaintiff "was not left financially liable for the VNA services, she retains standing to sue in federal court." (Doc 48 at 3 n.2.) The Secretary asserts that this court no longer retains subject matter jurisdiction because the case is now moot.[3] The Secretary contends that Plaintiff has already received the relief she seeks, has no financial liability for denied services, and thus no longer has a personal stake in the litigation. An action is moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (internal quotation marks and citations omitted). Generally, in a Medicare or Social Security case, mootness is measured by whether a claimant receives the benefits he or she is seeking. *See Headen v. Sullivan*, 1992 WL 471168, at *2 (S.D.N.Y. Sept. 8, 1992) (opining that, in a Social Security action seeking payment of benefits, "the actual payment of those benefits generally moots the action.") (citations omitted). Here, a final coverage determination as to Plaintiff's benefits has not yet been made. Accordingly, the case is not moot under *Headen*.

In addition, although the ALJ waived Plaintiff's financial responsibility for the services in question, a beneficiary retains his or her "injured" status when the Secretary refuses to pay providers for Medicare benefits the beneficiary has received. *See Longobardi v. Bowen*, 1988 WL 235576, at *2 (D. Conn. Oct. 25, 1988) (observing that even though plaintiff would not be the recipient of any benefit payments, Medicare statute created entitlement, and plaintiff had standing because "it is in the distribution of a

---

[3] The only case cited by the Secretary, *Ellis v. Blum*, 643 F.2d 68 (2d Cir. 1981), is inapposite. In *Ellis*, the government argued the case was moot because the plaintiff had been notified that she would not lose her disability benefits. The court held that the still-outstanding emotional suffering damages that plaintiff claimed saved the case from mootness. *Id.* at 83. Similarly, in this case, the still-outstanding coverage issues save the case from mootness.

benefit payment which comprises a portion of her Medicare entitlement" that gives plaintiff a stake in the coverage determination).

The case is not moot for the further reason that, if the ALJ's denial of coverage is ultimately affirmed, Plaintiff will retain an injury-in-fact because she will be presumed to have knowledge that the denied services will not be covered in the future and will thus be legally bound to her detriment by the outcome of this case. *See* 42 U.S.C. § 1395pp(b) (providing that, "in the case of comparable situations arising thereafter with respect to such individual, [she] shall, by reason of such notice . . . be deemed to have knowledge that payment cannot be made for such items or services."). This constitutes an injury-in-fact for standing purposes. *See Dennis v. Shalala*, 1994 WL 708166, at *1 n.1 (D. Vt. Mar. 4, 1994) ("[T]here is a justiciable case or controversy because, following an unfavorable determination, a Medicare recipient will be presumed for subsequent coverage issues to have knowledge that services will not be covered. 42 U.S.C. § 1395pp(b).").

Finally, the Medicare statute that authorizes judicial review of an ALJ's decision provides that, after a final decision has been rendered, "irrespective of the amount in controversy," an individual may obtain a review of that decision by filing a civil action. 42 U.S.C. § 405(g). As a result, even if a beneficiary qualifies for a limitation of liability and has no financial responsibility for services where coverage had been denied (as happened in this case), the beneficiary is, nevertheless, the sole person who can bring an action unless he or she declines to appeal (in which case the provider can exercise the beneficiary's rights). *See* 42 U.S.C. § 1395pp(d). Here, the beneficiary has chosen to appeal.

For the foregoing reasons, this case is not moot and the court has jurisdiction to consider Plaintiff's objections to the R & R.

 IV.    **Whether the Evidentiary Record is Incomplete.**

Plaintiff contends that "[i]t is not possible to determine whether the legal and factual errors made by the Secretary's reviewers were [d]ue [p]rocess violations without the addition of information not included in the administrative record." (Doc. 49 at 3.)

6

She raises the discovery argument with the caveat that she is doing so "[t]o the extent necessary to preserve her right to further appeal." (Doc. 49 at 2.) Plaintiff's argument reiterates the same argument that she previously made in an Objection to a July 2009 R & R, upon which the court has already ruled, rejecting that claim.

"The law of the case doctrine commands that 'when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case' unless 'cogent and compelling reasons militate otherwise.'" *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009) (quoting *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002)). The doctrine "expresses the practice of courts generally to refuse to reopen what has been decided . . . ." *Messenger v. Anderson*, 225 U.S. 436, 444 (1912) (citations omitted). Essentially, Plaintiff is asking the court to reconsider its adoption of the July 2009 R & R. The law of the case doctrine precludes such an exercise. To the extent Plaintiff merely seeks to preserve her objection to the denial of further discovery, whether and to what extent she has done so is properly directed to the court that may hear her appeal.

V. **Whether the ALJ Applied a Stability Presumption in Denying Coverage for Certain Services.**

Plaintiff challenges the ALJ's denial of coverage for skilled observation and assessment services, arguing that the ALJ erred by applying a retrospective "stability presumption" and evaluating Plaintiff's need for skilled services from the benefit of hindsight rather than from the perspective of the attending physician at the time the services were ordered. Plaintiff describes the "stability presumption" as "an unlawful presumption that Medicare coverage should be denied for all patients whose condition is chronic or stable. . . . [T]his stability presumption contradicts Medicare regulations requiring individualized assessments and explicitly proscribing the denial of coverage based solely on a patient's stability." (Doc. 48 at 9, citations omitted.)

The R & R concludes that the ALJ did not impose a "stability presumption" and further finds that hindsight was "different from—and not necessarily symptomatic of—the alleged error of ignoring Anderson's individual needs in favor of a presumption that

7

stable patients are not covered by Medicare." (Doc. 48 at 15). Plaintiff objects to both conclusions.

To receive Medicare benefits for home health care services, a beneficiary must be: (a) confined to the home; (b) under the care of a physician; (c) in need of skilled services; and (d) under a plan of care. 42 C.F.R. § 409.42(a)-(d). Skilled services "must be consistent with the nature and severity of the beneficiary's illness or injury, his or her particular medical needs, and accepted standards of medical and nursing practice." 42 C.F.R. § 409.44(b)(3)(i).

As the R & R points out, the issue before the ALJ was whether Plaintiff was "in need of skilled nursing . . . services throughout the relevant time period—that is, whether she received compensable skilled services and whether such services were 'reasonable and necessary.'" (Doc. 48 at 6, quoting 42 U.S.C. § 1395y(a)(1)(A) (providing that the fundamental requirement for Part A Medicare coverage is that the provided items and services be "reasonable and necessary for the diagnosis or treatment of illness or injury[.]")). Consideration is given to whether there is a "likelihood of a future complication or acute episode" and whether the beneficiary's condition and vital signs are "part of a longstanding pattern of the patient's condition, and there is no attempt to change the treatment to resolve them." *Medicare Benefit Policy Manual* ("MBPM"), CMS Pub. 100-02, § 40.1.2.1. The touchstone for determining whether skilled services are "reasonable and necessary" is from the forward-looking vantage point of the physician:

> The determination of whether the services are reasonable and necessary should be made in consideration that a physician has determined that the services are reasonable and necessary. The services must, therefore, be viewed from the perspective of the condition of the patient when the services were ordered and what was, at that time, reasonably expected to be appropriate treatment for the illness or injury throughout the certification period.
>
> . . .

MBPM § 40.1.1. A patient's chronic or stable condition does not provide a basis for automatically denying coverage for skilled services:

8

> The determination of whether a patient needs skilled nursing care should be based solely upon the patient's unique condition and individual needs, without regard to whether the illness or injury is acute, chronic, terminal, or expected to extend over a long period of time. In addition, skilled care may, depending on the unique condition of the patient, continue to be necessary for patients whose condition is stable.
>
> . . .

*Id.*

In finding that a stability presumption did not impact the ALJ's denial of coverage, the Magistrate Judge erroneously concluded that skilled services for observation and assessment of a plaintiff's condition are covered "only when there is a reasonable potential for a complication or further acute episode, and *not* when a patient's condition is stable and unlikely to change." (Doc. 48 at 13-14, citing, *inter alia*, MBPM § 40.1.2.1.) This improper limitation was based in part upon the Magistrate Judge's interpretation of the applicable regulation which provides:

> Observation and assessment constitute skilled services when the skills of a technical or professional person are required to identify and evaluate the patient's need for modification of treatment or for additional medical procedures until his or her condition is stabilized.

42 C.F.R. § 409.33(a)(2)(i). Pursuant to the regulation, "stabilization" determines *the duration* of skilled services. It *does not*, however, negate the possibility that "skilled care may, depending on the unique condition of the patient, continue to be necessary for patients whose condition is stable." MBMB § 40.1.1. Accordingly, while the Magistrate Judge is correct in concluding that the ALJ appropriately analyzed the Plaintiff's stability during the covered period, he is incorrect in concluding that skilled services are not covered "when a patient's condition is stable and unlikely to change." (Doc. 48 at 14 (citations omitted)).

The court is also not convinced that the ALJ's evaluation was free from the taint of a retrospective stability presumption. Although the ALJ concluded that the "documentation [regarding Plaintiff's condition] does not support the likelihood of a future complication or acute episode [or] a 'reasonable potential for complications'" (Administrative Record ["AR"] 73), she appears to have at least in part: (1) evaluated

9

Plaintiff's condition from the benefit of hindsight; and (2) denied coverage because Plaintiff's condition was stable during the covered period:

> For the dates at issue in this case, the Beneficiary *had no documented clinical instability*. There are no documented changes in medications, changes in the plan of care, or changes in the [Plaintiff's] baseline medical status that required skilled intervention. . . . The documentation does not support the likelihood of a future complication or acute episode, a reasonable potential for complications, or that the [Plaintiff's] condition or treatment regimen *was unstable* and required continued observation and assessment by a skilled nurse. Rather, the record indicates that the [Plaintiff's] condition *was chronically stable;* it reflects a longstanding pattern of her condition. . . . On the basis of this record, the undersigned ALJ finds the documentation does not support that the Beneficiary either needed or received [skilled nursing] services in accordance with Medicare criteria for coverage during the [home health] episode at issue.

(AR 73-74) (emphasis supplied).

This court has previously rejected both the use of hindsight and a stability presumption in denying coverage for services. For example, in *Colton v. Sec'y of Health & Human Servs.*, 1991 WL 350050, at *5 (D. Vt. Jan. 30, 1992), the court held that the "ALJ was incorrect in applying a retrospective analysis to the question of [beneficiary's] stability." The court reaffirmed this holding in *Folland ex rel. Smith v. Sullivan*, 1992 WL 295230 (D. Vt. Sept. 1, 1992), wherein it rejected a denial of services based on a "retrospective review of [the beneficiary's] vital signs," finding that "[t]he ALJ's interpretation of [the beneficiary's] condition is . . . flawed because it impermissibly relies on the benefit of hindsight, which of course is always 20-20." *Id.* at *7. The court further rejected the ALJ's reliance on a retrospective stability presumption:

> The determination of whether the services are reasonable and necessary should be made in consideration that a physician has determined that the services ordered are reasonable and necessary. The services must, therefore, be viewed from the perspective of the condition of the patient *when the services were ordered* and what was, at that time, reasonably expected to be appropriate treatment for the illness or injury throughout the certification period.

> Home Health Agency Manual § 205.1(A)(4) (emphasis added). *See Colton* No. 90-244, slip. op. at 12-13 (accord). The fact that Smith did not experience the complications sought to be avoided by the type of care described in §§ 409.33(1)-(2) does not mean that those services were not reasonably expected to be appropriate treatment throughout the certification period, and thus reasonable and necessary. To hold otherwise would be illogical. The fact that skilled care has stabilized a claimant's health does not render that level of care unnecessary. An elderly claimant need not risk a deterioration of her fragile health to validate the continuing requirement for skilled care.

*Id.* at *7.

In *Smith ex rel. McDonald v. Shalala*, 855 F. Supp. 658 (D. Vt. 1994), the court again reversed the ALJ's determination that a beneficiary did not require a skilled level of care because the beneficiary's condition was stable. Ruling that the ALJ's decision was not supported by substantial evidence, the court further found that the ALJ "impermissibly relie[d]" on a "retrospective review" of plaintiff's vital signs. *Id.* at 663. It pointed out that, "[t]he fact that [beneficiary] did not experience the complications sought to be avoided by the type of care described in §§ 409.33(a)(1)-(2) does not mean that those services were not reasonably expected to be appropriate treatment throughout the certification period, and thus reasonable and necessary." *Id.*

More recently, this court rejected the ALJ's decision that, because the beneficiary was in a "clinically stable condition" with normal vital signs, a static treatment regimen, and no complications during the service periods in question, the beneficiary did not require skilled nursing services under 42 CFR § 409.33(a)(2)(i). *Carey*, 698 F. Supp. 2d at 454. The court noted that the MBPM recognizes that "skilled care may, depending on the unique condition of the patient, continue to be necessary for patients whose condition is stable." *Id.* (quoting MBPM § 40.1.1. at p. 36).

Application of the foregoing principles to the ALJ's determinations here leads the court to conclude that it must remand this case to allow the ALJ to reexamine the need for skilled services for observation and assessment from the perspective of the condition of Plaintiff at the time the services were ordered, free from any presumption that if

11

hindsight reveals Plaintiff's condition was stable throughout the covered period, coverage for skilled services should be denied.

### VI. Remand Recommended by the Magistrate Judge.

Neither party has objected to the Magistrate Judge's recommendation that the ALJ's decisions denying coverage for physical and occupational therapy be reversed on the ground that these decisions were not supported by substantial evidence. The parties also do not object to a remand so that the ALJ may properly consider Dr. Mann's physician certifications. Finally, the parties do not object to a remand so that the ALJ may adequately evaluate whether Plaintiff required skilled home services for the management of her care and patient education. Having carefully reviewed the R & R's recommendations in this respect, the court finds them well-reasoned and hereby ADOPTS them in full.

### CONCLUSION

For the reasons stated above, the court hereby ADOPTS the Magistrate Judge's Report and Recommendation with the exception of its recommendations with regard to the stability presumption for observation and assessment services, which the court hereby REJECTS. The court REMANDS this matter to the ALJ for redetermination consistent with the rulings set forth herein.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 25th day of October, 2010.

Christina Reiss
United States District Court Judge