UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| SANDRA ANDERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 5:09-cv-16 |
| | ) |
| KATHLEEN SEBELIUS, | ) |
| Secretary of Health and Human | ) |
| Services, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR ATTORNEY'S FEES**
(Doc. 53)

This matter came before the court on Plaintiff Sandra Anderson's motion (Doc. 53) for attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d) ("EAJA"). Plaintiff seeks $53,484.49 in attorney's fees and expenses incurred in her challenge to the denial by Defendant, Secretary of Health and Human Services ("Secretary"), of coverage for Plaintiff's home health services under the Medicare Part A program. The Secretary opposes the motion, arguing that the amount claimed is excessive and should be substantially reduced. The parties completed briefing on March 11, 2011.

Plaintiff is represented by Gill Deford, Esq. and Jacob S. Speidel, Esq. The Secretary is represented by AUSA Nikolas P. Kerest.

I. **Factual and Procedural Background.**

A. **Plaintiff's Complaint.**

In January 2009, Plaintiff filed a Complaint in which she alleged three causes of action. First, she alleged that the Secretary violated applicable Medicare statutory, regulatory, and policy manual provisions by applying an "unlawful" presumption

whereby coverage is denied for patients whose conditions are stable during the covered period (the "stability presumption"). Second, Plaintiff claimed that this stability presumption violated her Fifth Amendment due process rights, as well as the due process rights of other Medicare beneficiaries. Third, Plaintiff alleged that the Secretary's factual findings in denying her coverage were not supported by substantial evidence. In her prayer for relief, Plaintiff sought reversal of the Secretary's decision denying Medicare home health coverage; a declaration that the Secretary's stability presumption violated the Medicare statute and regulations as well as due process; a permanent injunction and writ of mandamus prohibiting the Secretary from applying the stability presumption to Plaintiff and all other similarly situated beneficiaries; and attorney's fees and costs pursuant to the EAJA.

### B. The August 2010 Report and Recommendation.

In April 2009, Plaintiff moved to terminate referral of the case to the U.S. Magistrate Judge. She also moved for an order allowing discovery. In these motions, she described her case as "primarily a broad challenge to a policy and practice being improperly imposed by the Secretary" (referring to the stability presumption). (Doc. 7-1 at 3.) Plaintiff argued that because her case was not a routine appeal under the Social Security Act,[1] and was not confined to payment of her individual benefits, she needed more time to conduct broader discovery than the District of Vermont's Local Rules ordinarily authorize in appeals under the Social Security Act.

The Secretary opposed both motions. The district court (Murtha, J.) denied the motion for termination of referral, and referred the motion concerning discovery to the Magistrate Judge. After a hearing, the Magistrate Judge concluded that the Local Rules did not contemplate discovery in appeals filed pursuant to the Social Security Act, and Plaintiff's right to discovery was not expanded by her claim for mandamus relief. The Magistrate Judge rejected Plaintiff's arguments that the administrative record was

---

[1] The Medicare statute is found under Title XVIII of the Social Security Act, 42 U.S.C. § 1395-1395iii.

incomplete and held that Plaintiff's due process claim could be adjudicated under the usual review procedures for Social Security Act challenges. In December 2009, the district court (Murtha, J.) affirmed the Magistrate Judge's Order denying discovery.

In March 2010, Plaintiff filed a motion to reverse the Secretary's decision with regard to the denial of coverage for home health care services. She argued that the Administrative Law Judge ("ALJ") had committed legal errors and made factual findings not supported by substantial evidence. She further claimed that the Secretary denied her coverage by applying the unlawful "stability presumption" which violated her due process rights.

In his Report and Recommendation ("R & R"), the Magistrate Judge found that the ALJ did not apply a stability presumption in denying Plaintiff's coverage for home health services. He rejected Plaintiff's associated arguments that her due process rights were violated, and denied her request for declarative, injunctive, and mandamus relief. He nevertheless found that reversal and remand were appropriate because the denial of Plaintiff's request for coverage was not supported by substantial evidence and because the ALJ made legal errors in her analysis. Plaintiff objected to those portions of the R & R wherein the Magistrate Judge concluded that the Secretary did not apply a stability presumption, and that the stability presumption did not constitute a denial of due process. Plaintiff also argued that she was improperly denied her right to discovery.

### C. The Court's Opinion and Order.

By Opinion and Order dated October 25, 2010 (Reiss, J.), the court adopted in part and rejected in part the R & R. Neither party objected to: (1) the Magistrate Judge's recommendations that the matter be reversed and remanded so that the ALJ could reassess and reevaluate the denial of coverage for Plaintiff's home health services; and (2) the Magistrate Judge's recommendation that found Plaintiff was not entitled to declarative, injunctive, or mandamus relief.[2] The court adopted those recommendations in full.

---

[2] Specifically, the parties did not object to reversal of the ALJ's decision denying coverage for physical and occupational therapy on the grounds that they were not supported by substantial

The court, however, rejected the R & R's conclusion that a retrospective stability presumption had not impacted the ALJ's denial of coverage, observing that it was unclear whether the ALJ's decision was tainted by such a presumption. The court remanded the matter for a determination of this issue, ordering the ALJ to "reexamine the need for skilled services . . . from the perspective of the condition of Plaintiff at the time the services were ordered, free from any presumption that if hindsight reveals Plaintiff's condition was stable throughout the covered period, coverage for skilled services should be denied." (Doc. 51 at 11-12.) In addition, the court rejected Plaintiff's argument that it was impossible to assess the Secretary's legal and factual errors without greater discovery, ruling that this issue was governed by Judge Murtha's December 2009 Order adopting the Magistrate Judge's July 2009 Order.[3]

### D. Plaintiff's EAJA Motion.

Plaintiff's EAJA motion includes the billing records from her counsel who worked on this case in 2008-2010. Jacob S. Speidel, Esq., staff attorney at Vermont Legal Aid, Inc., spent 201.1 hours on the case and charged an hourly rate of $150.00. His fee request totals $30,165, plus $256.20 in expenses. Gill Deford, Esq., Director of Litigation for the Center for Medicare Advocacy, Inc. in Mansfield, Connecticut, spent 68.5 hours on the case and charged an hourly rate of $176.25 for 2008 and 2009, and $178.75 per hour for 2010. His fee request totals $12,129.13, plus $499.28 in expenses. Michael Benvenuto, project director of the Senior Citizens Law Project and Medicare Advocacy Project at Vermont Legal Aid, spent 30.1 hours on the case and charged an

---

evidence; the ALJ had not properly considered physician certifications; and the ALJ had not properly evaluated whether Plaintiff required skilled home services for the management of her care and patient education.

[3] Plaintiff interjected the discovery issue as an objection to the Magistrate Judge's August 2010 R & R, even though she had not again raised the discovery issue in her motion to reverse the Secretary's decision with regard to denial of coverage for home health services. She stated she had done so in order to preserve her right to further appeal.

hourly rate of $176.25 in 2009 and 178.75 in 2010. His fee request totals $5,339.88.[4] Plaintiff's counsel seek $48,389.49 in fees and expenses: $12,628.41 to be paid to the Center for Medicare Advocacy, and $35,761.49 to be paid to Vermont Legal Aid. Finally, Plaintiff requests an award of $5,095.00 for the attorney's fees her counsel incurred in the preparation and defense of the EAJA motion. Plaintiff seeks a total award of $53,484.49.

The Secretary does not challenge the attorneys' hourly rates or, for purposes of this case only, Plaintiff's status as the prevailing party. The Secretary nonetheless maintains that a reduction in Plaintiff's fees and expenses is warranted because: (1) Plaintiff unsuccessfully attempted to obtain discovery and withdraw the reference to the Magistrate Judge; (2) Plaintiff did not prevail on her due process, injunctive relief, and mandamus relief claims; (3) Plaintiff's fee request reflects the inherent inefficiency of three attorneys participating in the litigation; and (4) any EAJA award must be paid to Plaintiff, not to her attorneys.

## II.  Conclusions of Law and Analysis.

### A. Standard for Awarding EAJA Attorney's Fees.

The EAJA provides, in pertinent part, that

> a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action . . . brought by or against the United States . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).

A fee applicant has the burden of establishing the reasonableness of the award, *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), and "no award of fees is automatic." *Commissioner, INS v. Jean*, 496 U.S. 154, 163 (1990) (internal quotation marks omitted). The court must determine whether the applicant has met that burden, but "'need not . . . scrutinize[ ] each action taken or the time spent on it.'" *Torres v. Barnhart*, 2007 WL

---

[4] Mr. Benvenuto is not identified on the docket as representing Plaintiff, although he avers in his Declaration that he represents her in this case. (Doc. 53-3 ¶ 4.)

1810238, at *14 (S.D.N.Y. June 25, 2007) (quoting *Aston v. Sec'y of HHS*, 808 F.2d 9, 11 (2d Cir. 1986)). The "most useful starting point" to determine whether a fee is reasonable is to multiply the "number of hours reasonably expended on the litigation" by a "reasonable hourly rate," *Hensley*, 461 U.S. at 433, known as the "lodestar" method. "There is . . . a strong presumption that the lodestar figure represents a reasonable fee." *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999) (internal quotation marks and citations omitted). In addition, "the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees[.]" *Hensley*, 461 U.S. at 440.

Both the EAJA and case law allow courts to limit fee awards. The EAJA provides that a court, "in its discretion, may reduce the amount to be awarded . . . or deny an award, to the extent that the prevailing party during the course of the proceedings engaged in conduct which unduly and unreasonably protracted the final resolution of the matter in controversy." 28 U.S.C. § 2412(d)(1)(C). Accordingly,

> [t]he district court also should exclude from this initial fee calculation hours that were not reasonably expended. Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. . . . Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority.

*Hensley*, 461 U.S. at 434 (internal quotation marks and citations omitted); *see also Jean*, 496 U.S. at 163 (stating that a court has a duty to discount any "[e]xorbitant, unfounded, or procedurally defective fee applications" to ensure the final award is reasonable.). In determining a reasonable fee, the court may

> consider factors including, but not limited to, the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation

> himself, whether an attorney might have initially acted *pro bono* (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 184 (2d Cir. 2008). While the *Arbor Hill* factors are directed to the reasonableness of the hourly rate, they emphasize that, in reviewing fee requests, "[t]here is no precise rule or formula for making these [fee award] determinations." *Hensley*, 461 U.S. at 436.

### B. Fees Incurred for Discovery Litigation.

The Secretary urges the court to reduce the amount of the attorney's fees award to account for Plaintiff's unsuccessful effort to obtain discovery and to force withdrawal of the reference to the Magistrate Judge. From a review of the attorneys' time records, the Secretary calculates that Plaintiff's attorneys "spent *all* of their time in the case from January 22, 2009 to December 18, 2009 (the date on which the [c]ourt affirmed the Magistrate Judge's denial of discovery) on their quest for discovery (and the related attempt to withdraw the reference)," amounting to 104.2 hours of legal work. (Doc. 56 at 6.) The Secretary points out that Plaintiff's attorneys spent additional time on the discovery issue in the course of objecting to the R & R. Indeed, most of the expenses ($499.28 for Attorney Deford and $134.20 for Attorney Speidel) related to their appearances at the July 2009 discovery argument before the Magistrate Judge.

Plaintiff counters that her unsuccessful discovery motion was not "frivolous," that clear precedent permitted discovery for some Medicare cases, and therefore the presumptively reasonable fee she requests should not be reduced.

The "most critical factor" in determining the amount of attorney's fees "is the degree of success obtained." *Hensley,* 461 U.S. at 436. "Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." *Id.* at 440. A court may reduce attorney's fees where a plaintiff has achieved "only partial or limited success," and such a reduction may be warranted "even

where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Hensley*, 461 U.S. at 436.

Here, Plaintiff's requests for discovery and withdrawal of the reference are distinct from other parts of the case and were wholly unsuccessful. The court agrees that fees and expenses incurred in those efforts should be deducted from the attorney's fee award. *See Hensley*, 461 U.S. at 436; *see also Kassim v. City of Schenectady*, 415 F.3d 246, 256 (2d Cir. 2005) (reducing award to prevailing plaintiff below the lodestar for unsuccessful portions of the plaintiff's case or limited success, where reduction "is not restricted either to cases of multiple discrete theories or to cases in which the plaintiff won only a nominal or technical victory.").

Elimination of discovery-related fees and expenses from the fee award results in a deduction of $16,879.50 in legal fees and $633.48 in expenses.[5]

### C. Reduction in Attorney's Fees for Inefficiency.

In addition to the discovery-related reduction, the Secretary seeks a fifty percent across-the-board reduction of attorney's fees based on the fact that Plaintiff used three attorneys in this litigation. Pointing out that Plaintiff did not explain why she needed three attorneys, the Secretary posits that even if it was reasonable for Plaintiff to engage all three, the court should acknowledge that their collective labors resulted in a duplication of effort and excessive amounts of time spent on litigation. As examples, the Secretary cites 18.5 total hours spent drafting the complaint, between 15 to 32.7 hours billed to conference calls,[6] as well as 51.2 hours drafting Plaintiff's motion to reverse the Secretary's decision denying coverage.

---

[5] Attorney Speidel expended 56.6 hours on discovery-related matters at $150.00/hour, totaling $8,490.00; Attorney Deford expended 32.6 hours on discovery-related matters at $176.25/hour, totaling $5,745.75; and Attorney Benvenuto expended 15.0 hours on discovery-related matters at $176.25/hour, totaling $2,643.75. The court will therefore reduce the total requested fee award by $16,879.50 in legal fees (a total of 104.2 hours). The court will also disallow $499.28 in expenses for Attorney Deford and $134.20 in expenses for Attorney Speidel.

[6] The range in time results from the attorneys often recording time spent on conference calls in entries involving other matters, making it impossible to pinpoint the amount of time actually expended on separate tasks.

Plaintiff responds that "[g]iven the complexity of this case and the novelty of the legal issues presented, it was entirely reasonable for Anderson to retain three attorneys," the attorneys divided their tasks, and it was reasonable for Mr. Benvenuto to supervise, review, and edit the work of other Vermont Legal Aid attorneys. (Doc. 59 at 12.).

The burden is on Plaintiff to show "the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation." *Johnson v. Univ. College of Univ. of Ala. in Birmingham*, 706 F.2d 1205, 1208 (11th Cir. 1983) (citations omitted). Without detailed entries in the billing records, the court is unable to determine whether and when the contributions of the three attorneys were duplicative. On the other hand, the court notes that Plaintiff's attorneys vigorously pursued Plaintiff's claims, advanced creative arguments, and were in fact sufficiently successful to achieve uncontested "prevailing party" status.

Considering the totality of the circumstances, the court concludes that a reduction of the attorney's fee award across the board by twenty percent is appropriate. This reduction also reflects Plaintiff's lack of success on other claims identified by the Secretary. *See Malletier v. Apex Creative Int'l Corp.*, 687 F. Supp. 2d 347, 363 (S.D.N.Y. 2010) (citing cases where courts made across-the-board reductions in attorney's fees ranging from fifteen to seventy-five percent of fees requested). A twenty percent reduction results in fees in the amount of $24,603.61 and expenses in the amount of $122.00.

### D. Fees for Preparing and Defending the Fee Request.

Plaintiff's attorneys seek an additional award of $5,095.00 for preparing and defending their fee request. Attorney Speidel declares he has done 24.3 hours of work at $150.00 per hour, totaling $3,645.00; Attorney Deford declares he spent 7.0 hours of work at $181.25 per hour, totaling $1,268.75; and Attorney Benvenuto declares he has done 1.0 hour of work at $181.25 an hour, totaling $181.25. Invoking the same twenty percent across-the-board reduction from the $5,095.00 requested, amounting to $1,019.00, the court will award $4,076.00 in attorney's fees for preparing and defending the fee request.

### E. Whether the Award Should be Paid to Attorneys or Plaintiff.

Plaintiff has requested that any fee award in this case should be paid to her attorneys, the Center for Medicare Advocacy and Vermont Legal Aid. The Secretary maintains that paying the attorneys directly is inconsistent with the ruling in *Astrue v. Ratliff*, 130 S. Ct. 2521 (2010), where the Supreme Court held that an EAJA § 2412(d) fee award should be paid to the plaintiff, not the attorney. *Id.* at 2524. Plaintiff counters that *Ratliff* resolved only that a fee award is subject to Treasury offsets, that courts have adopted a wide range of approaches, and the Secretary "should distribute payment in the manner requested by Anderson." (Doc. 59 at 14.) While the court generally agrees that a plaintiff ought to be able to direct the payment of the fee award, *Ratliff* holds otherwise and directs that EAJA attorney's fees be paid to the litigant. *Id.* at 2527. This court thus directs the fee award to be payable to Plaintiff.

### CONCLUSION

For the reasons set forth above, the court hereby awards attorney's fees in the amount of $28,679.61 and expenses of $122.00, totaling $28,801.61, to Plaintiff.
SO ORDERED.

Dated at Burlington, in the District of Vermont, this 12th day of May, 2011.

Christina Reiss, Chief Judge
United States District Court